# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THEODORE R. LAPUTKA, III,

    Plaintiff,

    v.

THE PENNSYLVANIA STATE UNIVERSITY,

    Defendant.

CIVIL ACTION NO. 3:CV-11-1967

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant The Pennsylvania State University's ("Penn State") Motion for Summary Judgment. (Doc. 30.) In his Second Amended Complaint, Plaintiff Theodore R. Laputka, III ("Laputka") alleges that he was terminated from his employment with Penn State in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Because Laputka has not satisfied his burden of pointing to evidence from which a factfinder could reasonably infer that Penn State's nondiscriminatory justification for termination was merely pretext for age discrimination, Penn State's motion for summary judgment will be granted.

## I. Background

Laputka was hired by Penn State as a Systems Administrator on January 4, 2010. (*Def.'s Statement Material Facts*, "*Def.'s SMF*", ¶ 8*; Pl.'s Answer*, ¶ 8.) Laputka was forty-one (41) years old when he was hired. (*Def.'s SMF*, ¶ 9*; Pl.'s Answer*, ¶ 9.)

On May 20, 2010, the members of the Penn State Hazleton Information Technology Department, including Laputka, attended a conference at the Penn State Mont Alto Campus. (*Def.'s SMF*, ¶ 10*; Pl.'s Answer*, ¶ 10.) While the Technology Department was at the conference, Penn State Hazleton experienced problems with an important campus server. The server crashed, according to Penn State, causing personnel to lose access to certain computer services. (*Def.'s SMF*, ¶ 11.) Christine Mencer ("Mencer"), the Director

of Information Technology at the Penn State Hazleton Campus, learned from a Dell Computer representative that the cause of the crash appeared to be attributable to the servers being incorrectly set up. (*Mencer Dep. Tr.*, 25:1-19.) Mencer claims the ESX server was set up by Laputka. (*Id*. at 31:10-22.)

Laputka disputes that the computer incident on May 20, 2010 was a crash. Rather, the incident was a server lock up that only required the server to be shut down and rebooted. (*Pl.'s Answer*, ¶ 11.) He also maintains that the primary server was installed by his predecessor. (*Laputka Aff.*, ¶ 6.)

About a week after the May 20, 2010 incident, Mencer asked Laputka, as well as her other employees, to prepare reports detailing their daily activities. (*Mencer Dep. Tr.*, 32:20-25, 35:16-17.)

In the weeks following the May 20, 2010 incident, the server crashed two additional times. (*Id*. at 61:20-22.) After the last crash, Mencer was informed by a Dell Computer representative that the crashes occurred because the systems administrator made changes to the system that were not correct and because the systems were improperly maintained. (*Id*. at 65:3-66:24.)

Laputka also disputes that the last two incidents involved a system crash. (*Laputka Aff.*, ¶¶ 7-8.) The second incident involved a different server from the May 20, 2010 incident, and the server began working properly after it was reloaded and reconfigured. (*Id*. at ¶ 7.) The third incident required Laputka to reconfigure a storage array because he did not like its initial configuration. (*Id*. at ¶ 8.) The array never crashed, however, and the reconfiguration occurred before the array was connected to the live system. (*Id*.)

Prior to May 20, 2010, Mencer never counseled Laputka as to his performance being unacceptable. (*Mencer Dep. Tr.,* 71:2-17.) But, following the first incident, Mencer discussed Laputka's substandard performance with him during meetings discussing his

daily reports. (*Id*. at 71:10-14.)

Ultimately, on June 14, 2010, Laputka was discharged from his employment with Penn State. (*Def.'s SMF*, ¶ 20; *Pl.'s Answer*, ¶ 19.) The termination meeting was attended by Laputka, Mencer, and Thomas Butchko ("Butchko"), Director of Business Services at the Penn State Hazleton Campus. (*Mencer Dep. Tr.*, 77:6-8.) At the meeting, Butchko informed Laputka that he was being terminated because he "didn't fit." (*Id*. at 77:11-20.) Butchko did not tell Laputka that his termination was related to an inability to perform his job. (*Id*. at 78:2-4.) Laputka was forty-one (41) years old when he was discharged from his employment with Penn State. (*Def.'s SMF*, ¶ 22*; Pl.'s Answer*, ¶ 22.) Laputka's termination occurred approximately two weeks before the completion of his six-month probationary period. (*Mencer Dep. Tr.*, 70:21-71:1.)

After Laputka was discharged, Penn State formed a search committee to interview and evaluate individuals to fill the open Systems Administrator position. (*Def.'s SMF*, ¶ 24; *Pl.'s Answer*, ¶ 24.) Penn State interviewed three candidates for the position. (*Def.'s SMF*. ¶ 25; *Pl.'s Answer*, ¶ 25.) One of the candidates interviewed for the Systems Administrator position was Dean Williams ("Williams"). (*Def.'s SMF*, ¶ 25; *Pl.'s Answer*, 26.) Williams was eventually hired in December 2010 as Systems Administrator. (*Def.'s SMF*, ¶ 27; *Pl.'s Answer*, ¶ 27.) He was twenty-eight (28) years old at the time. (*Def.'s SMF*, ¶ 28; *Pl.'s Answer*, ¶ 28.) Prior to assuming the role of Systems Administrator, Williams was an IT Specialist at the Penn State Hazleton Campus. (*Def.'s SMF*; ¶ 30; *Pl.'s Answer*, ¶ 30.) Williams has a Bachelor's Degree in Information Technology Administration, which he obtained from Penn State in 2006. (*Def.'s SMF*, ¶ 29; *Pl.'s Answer*, ¶ 29.)

Based on the foregoing events, Laputka commenced this action on October 21, 2011. (Doc. 1.) On March 27, 2012, Laputka filed his Second Amended Complaint, alleging a single claim for age discrimination in violation of the ADEA. (Doc. 13.) Following the filing

3

of Penn State's Answer and Affirmative Defenses to the Second Amended Complaint (Doc. 14), the action proceeded to discovery.

On January 31, 2013, Penn State filed its motion for summary judgment (Doc. 30), brief in support (Doc. 32), and statement of undisputed material facts. (Doc. 31.) Specifically, Penn State seeks summary judgment on the ADEA claim on the basis that Laputka cannot identify any evidence of record discrediting Penn State's legitimate, nondiscriminatory reason for terminating his employment. Laputka argues in opposition that Penn State's motion must be denied because the articulated business justification for termination is based on inadmissible hearsay and relies on facts not properly disclosed during discovery. And, as a result of the allegedly defective discovery responses, Laputka moves to strike paragraphs 11, 12, 13, 14, 15, 17, and 18 of Penn State's statement of undisputed material facts. (Doc. 39.) Now, as both motions are fully briefed, they are ripe for disposition.

## II. Discussion

**A.    Laputka's Motion to Strike**

Because Laputka seeks to limit the evidence available to Penn State in support of its summary judgment motion, Laputka's motion to strike will be addressed first. "[A]fter the 2010 amendments to the Federal Rules of Civil Procedure ("Rule") 56, it is no longer appropriate to attack the admissibility of summary judgment evidence by way of a motion to strike." *Ankney v. Wakefield*, No. 10-1290, 2012 WL 1633803, at *1 (W.D. Pa. May 8, 2012) (citing *Smith v. Interim Healthcare of Cincinnati, Inc.*, Civ. No. 10–582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011); *Cutting Underwater Techs. USA, Inc. v. ConDive, LLC*, Civ. No. 09–387, 2011 WL 1103679, at *3 (E.D. La. Mar. 22, 2011)). Consistent with other courts that have dealt with improper motions to strike following the 2010 amendments, Laputka's motion to strike will be treated as objections under Rule 56(c)(2). *See id.* (citing

4

*Cutting Underwater Techs.*, 2011 WL 1103679, at *3).

Laputka objects to the following paragraphs in Penn State's statement of facts:

(11) During the May 2010 conference, an important server crashed, which caused campus personnel to lose access to certain computer services;
(12) After consulting with a Dell Computer representative, it was determined that the server crashed because it was improperly set up;
(13) Plaintiff was responsible for the set up of the campus server that crashed on May 20, 2010;
(14) During the May 2010 conference, Plaintiff used a remote system to access the campus computer network;
(15) Plaintiff was not given permission to use a remote system to access the campus computer network;
(17) Subsequent to the server crash in May 2010, the server crashed two (2) additional times;
(18) The two (2) additional crashes were caused by incorrect changes made to the system by Plaintiff as a Systems Administrator; namely, that the systems were not set up and being maintained correctly; and
(21) Plaintiff was discharged from employment for performance related issues. Specifically, Plaintiff was discharged as a result of the computer crashes.

(*Def.'s SMF*, ¶¶ 11-15, 17-18, 21.) According to Laputka, these paragraphs "allege facts concerning termination not previously disclosed in discovery responses to Interrogatories, Production of Documents, or Transcripts." (Doc. 39, ¶ 7.) Laputka also maintains that these paragraphs are based on "alleged hearsay evidence." (*Id.* at ¶ 9.)

Laputka's objections to the evidence offered by Penn State in support of its motion for summary judgment will be overruled. First, contrary to Laputka's claim that these facts were not disclosed in discovery responses to "Transcripts," (Doc. 39, ¶ 7), the deposition transcripts confirm that Penn State's witnesses testified to these facts during their depositions. (*See, e.g., Mencer Dep. Tr.*, 31:10-32:25, 60:4-22, 65:3-6, 66:23-24, 71:10-18; *Ritzko Dep. Tr.*, 10:10-21, 31:3-25.)

Second, I disagree with Laputka that the facts concerning his termination were not disclosed in response to Interrogatory # 5 or Request for Production of Documents #7 and #8. Interrogatory #5 states: "Please set forth in full detail the circumstances under which the Plaintiff's employment was terminated." (*Pl.'s Answer*, Ex. C.) Document Request # 7 sought production of "any and all documents including Penn State Human Resources that

5

relate or pertain to the termination of Plaintiff's employment including without limitation, any internal notes, or memoranda." (*Id.*) And, Document Request #8 sought "any and all documents that show or reflect who made the decision or that relate or pertain to any conversations or communications to terminate the Plaintiff's employment without limitation, any internal notes or memoranda." (*Id.*)

In response to the document requests, Penn State cited to statements of Mencer and Butchko (Bates Nos. D00017-D00020), emails and log notes (D00026-D00031), notes of Christopher Ritzko ("Ritzko") and Mencer (D00055-D00061), and Laputka's personnel file and related documents (D00062-D00192). Penn State's response to Interrogatory #5 directed Laputka to these documents, as well as the Staff Employee Handbook (D00212-D0261), Index of University Policies (D00262-D00272), and HR34 Policy Employment Conditions for Staff Employees (D00273-D00288). The documents referenced by Penn State support its position that the facts it relies on in support of its request for summary judgment were disclosed during discovery. For example, the evidence that the ESX server crashed on May 20, 2010 because it was improperly set up, (*Pl.'s Answer*, Ex. C, "D00017" thereto),[1] that two other crashes occurred in early June 2010, (*Id.* at Ex. C, "D00055" thereto), and that Laputka was terminated after discussions regarding his ability to safely and effectively manage the computer network and Penn State's lack of comfort with Laputka continuing in that position, (*Id.* at Ex. C, "D00019" thereto), were all disclosed during discovery. Accordingly, Laputka's claim that Penn State never identified in discovery that he was terminated for performance-related reasons is rebutted by the evidence of record in this matter. And, while Penn State could have- and likely should have- answered

---

[1] Laputka in fact acknowledged during his deposition that he saw documents produced during discovery that contained statements that the ESX server was improperly set up. (*Laputka Dep. Tr.*, 79:16-22.)

6

Interrogatory #5 without merely citing to produced documents, Penn State's response identified its concerns with regard to Laputka's work performance.

Third, Laputka's objection to Penn State's statement of facts on hearsay grounds will be overruled. For one, Laputka has not cited any legal authority to support his claim that Mencer's testimony is based on inadmissible hearsay. (Docs. 38, 39.) Moreover, the purpose for which Penn State seeks to introduce the Dell Computer representative's statements to Mencer is not hearsay. Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The issue addressed here is not whether the servers crashed as a result of improper set up by the Systems Administrator, but whether Penn State, by virtue of the statements, had a legitimate, non-discriminatory reason for discharging Laputka. *See, e.g., Jefferson v. Burger King Corp.*, No. 12-12540, 2013 WL 323224, at *5 (11th Cir. Jan. 29, 2013) (employees' complaints about the plaintiff's behavior "are not hearsay because they were not offered for the truth of the matter asserted; instead, they were offered only to establish that [the employer] had legitimate, non-discriminatory reasons for terminating [the plaintiff's] employment."); *cf. Hale v. McMillen*, 363 F. App'x 215, 217 (3d Cir. 2010) (the defendants were properly permitted to testify about statements made to them by an informant as "those statements were not offered for their truth (*i.e.*, that [the plaintiff] stole the paper); rather, the informant's statements were introduced to demonstrate that the defendants had a legitimate penological motive for removing [the plaintiff] from his prison library job (*i.e.*, their belief that he was stealing paper).").

Similarly, Mencer, Ritzko, and Butchko's hand-written notes are not hearsay because they are not being offered to prove the truth of what they assert. Instead, they are being offered to demonstrate the state of mind of Penn State's employees in reaching the

7

decision to terminate Laputka. *See, e.g., Kaur v. New York City Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (personnel documents, including hand-written notes, are not hearsay because "the documents are being offered to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff; the truth of the assertions in the documents is irrelevant.").

Lastly, to the extent that any of the statements to Mencer by Dell employees are hearsay, they can be considered because the out-of-court declarant, Dell representative John Daley, could be produced at trial. "A court may consider hearsay evidence at the summary judgment stage 'if the out-of-court declarant could later present that evidence through direct testimony, *i.e.* in a form that would be admissible at trial.'" *O'Neill v. Potter*, No. 07-5045, 2009 WL 3488700, at *2 (D. N.J. Oct. 22, 2009) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 466 (3d Cir. 1989); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Del. Co., Inc.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) (holding that a statement, although hearsay, can be considered for summary judgment purposes because the nonmoving party "simply has to produce the [declarant] to give [ ] testimony")). Since there is no indication that the declarant of the allegedly hearsay statement would be unavailable to testify at trial, the statements are properly considered in adjudicating this motion. *See, e.g., Perry v. H & R Block E. Enter., Inc.*, No. 04-6108, 2007 WL 954129, at *9 (E.D. Pa. Mar. 27, 2007).

Laputka's objections to Penn State's summary judgment evidence will be overruled.

## B. Penn State's Summary Judgment Motion

### 1. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence

9

supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 2. The Evidence Fails to Establish a Viable ADEA Claim

The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Of course, the purpose of this statute is to "prohibit age discrimination in employment" and "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b).

To succeed on an ADEA claim, a plaintiff must make a showing either by "(1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 261, 104 L. Ed. 2d 268, 109 S. Ct. 1775, 1796 (1989), or (2) presenting indirect evidence of

10

discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas*." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (footnote omitted, referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Where indirect evidence is being relied upon, it is appropriate to proceed under the *McDonnell Douglas* analysis. *Id*. Here, the evidence presented by Laputka is most appropriately analyzed as indirect evidence under the *McDonnell Douglas* framework.

To establish a *prima facie* case of age discrimination, Laputka must demonstrate "(1) he is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004) (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)). Once this is established, the employer then bears the burden of production[2] in

---

[2] Of course, the burden of *persuasion* must always lie with the plaintiff. *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). In *Gross v. FBL Financial Services*, 557 U.S. 167, 177-78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), the Supreme Court held that the ADEA does not allow for mixed-motive age discrimination claims, in other words, that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Such 'but-for' causation must be established by a preponderance of the evidence, either direct or circumstantial. *Id.* The Supreme Court then rejected the burden shifting encouraged under the *Price Waterhouse* analysis- "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180, 129 S. Ct. 2343 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989)). In light of *Gross*, the Court of Appeals has determined that while shifting the burden of persuasion would be inappropriate, *McDonnell Douglas* only shifts "the burden of production (i.e., of going forward) . . . to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith*, 589 F.3d at 691. "Hence, *Gross*, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims." *Id.*

11

order "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)). "This burden is 'relatively light' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

If the employer satisfies his burden, "the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Smith*, 589 F.3d at 690 (citing *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995)). "The plaintiff must make this showing of pretext to defeat a motion for summary judgment." *Burton*, 707 F.3d 426-27 (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)). "A plaintiff may evince pretext, and so defeat a motion for summary judgment, by either '(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Ullrich v. Sec'y of Veterans Affairs*, 457 F. App'x 132, 138 (3d Cir. 2012) (quoting *Fuentes*, 32 F.3d at 764). Proving pretext "'places a difficult burden on the plaintiff.'" *Carlson v. Twp. of Lower Alloways Creek*, 452 F. App'x 95, 100 (3d Cir. 2011) (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). Ultimately, the plaintiff bears the burden "to show age discrimination was the but-for cause of the complained-of action." *Wardlaw v. City of Phila.*, 378 F. App'x 222, 226 (3d Cir. 2010) (citing *Gross*, 557 U.S. 167,

12

129 S. Ct. 2343; *Smith*, 589 F.3d at 691).

### a. *Prima Facie* Case

For purposes of the instant motion, Penn State has assumed that Laputka can establish a *prima facie* case of age discrimination under the *McDonnell Douglas* framework. (Doc. 32, 8.) The evidence of record confirms that Laputka has satisfied his obligation of establishing a *prima facie* case of discrimination. As such, the burden of production shifts to Penn State to identify a legitimate, nondiscriminatory reason for Laputka's termination.

### b. **Nondiscriminatory Justification**

Through the testimony of its representatives and the documents it submitted, Penn State has satisfied its burden of production of identifying a legitimate, nondiscriminatory business reason for terminating Laputka. According to Penn State, Laputka was discharged for poor work performance, particularly related to server crashes and improper server set up and maintenance. Penn State has thus satisfied its relatively light burden of introducing evidence which, taken as true, supports the conclusion that the adverse employment action taken against Laputka was not the product of discrimination.

### c. **Pretext**

In order to survive summary judgment, Laputka must evince pretext by pointing to some evidence "'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764).

#### i. **Disbelief of Stated Justification**

To discredit Penn State's articulated reason for his termination, Laputka need not produce evidence that necessarily leads to the conclusion that Penn State acted for discriminatory reasons, nor does he need to produce evidence beyond his *prima facie* case.

13

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 6544 (3d Cir. 1998). But, in attacking the credibility of Penn State's justification, Laputka must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer that the proffered nondiscriminatory reason 'did not actually motivate' the employer's action." *Id*. (quoting *Fuentes*, 32 F.3d at 764).

Laputka appears to identify three reasons for which he claims a factfinder could disbelieve Penn State's stated justification for his termination: (1) Penn State failed to prove that the computer incidences were actually crashes or the same servers, "which is a genuine issue of fact which Defendant must prove or its defense fails," (Doc. 38, 6); (2) "there are issues of fact and credibility on the part of Christine Mencer," as her deposition testimony was repeatedly contradicted by testimony of other Penn State employees, (*Id*. at 5); and (3) Penn State's articulated "crashes or poor work performance" justification for his termination is inconsistent with the "didn't fit" explanation provided at his termination meeting. (*Id*. at 6.) Laputka's theories and the evidence he cites does not discredit Penn State's legitimate reason for termination.

First, Laputka is incorrect insofar as he claims that Penn State must prove the computer incidences were crashes or they were the same servers in order to obtain summary judgment on the age discrimination claim. Indeed, the "factual dispute at issue is whether discriminatory animus motivated [Penn State], not whether [Penn State] is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 764. Whether Penn State was wrong and the computer incidents were in fact lockups is irrelevant. The core issue is whether Penn State acted with discriminatory animus, not whether Penn State correctly identified the computer incidents as crashes as opposed to lockouts or arrays. *See, e.g., Ball v. Einstein Cmty. Health Assoc., Inc.*, No. 12-1729, 2013 WL 542643, at *2 (3d Cir. Feb. 14,

14

2013) ("The fact that an employer made a poor or unwise decision does not make that decision discriminatory.").

Second, the claimed inconsistencies between Mencer's testimony and the testimony of Williams, Ritzko, and Dr. Lawler do not demonstrate such implausibilities, inconsistencies, or contradictions that a reasonable factfinder could rationally find Penn State's nondiscriminatory justification unworthy of credence. *Fuentes*, 32 F.3d at 765. According to Laputka, Mencer and Williams offered contradictory testimony as to Williams' training on VMware in the summer of 2010. (Doc. 38, 5 (citing *Mencer Dep. Tr.*, 79:13-21; *Williams Dep Tr.*, 10:1-11:25).) Yet, both witnesses' testimony was consistent as to Williams' training on this software prior to obtaining the position as Systems Administrator. (*Compare Mencer Dep. Tr.*, 79:13-80:4 (Williams was not trained as to VMware in the summer of 2010, and "formally, no, I did not send him for VMware training until after he was the System Administrator."), *with Williams Dep. Tr.*, 10:5-20 ("the training wasn't intended for me, but I was allowed to observe," and "I was allowed to sit in a room and listen in on what the instructor was informing Mr. Ritzko of.")). Likewise, the claimed inconsistencies between Mencer and Dr. Lawler's testimony cited to in the record by Laputka, (Doc. 38, 5), do not support a finding of pretext. (*Compare Mencer Dep. Tr.*, 58:11-13 (Q: So you did not ask Dr. Lawler to terminate Mr. Laputka? A: I did not."), *with Dr. Lawler Dep. Tr.*, 14:20-22 ("she thought that the situation was not going to get better and that we probably should exercise our ability to let him go.").) These claimed inconsistencies and contradictions present no "serious challenge" to Penn State's credibility or its proffered poor performance justification for Laputka's termination. *See Ball*, 2013 WL 542643, at \*5.

Laputka's final argument, that the poor performance justification is pretextual since he was only informed at his termination meeting that he was being discharged because he "didn't fit", does not legitimately call into question Penn State's proffered reason for his

15

termination. Essentially, "Plaintiff takes issue with the fact that Defendant told Plaintiff at the time of his termination that he was being terminated [because he "didn't fit,"] but now, in responding to Plaintiff's legal claims, asserts that its legitimate, non-discriminatory reason for terminating Plaintiff was Plaintiff's performance." *D'Alessandro v. City of Newark*, No. 08-1886, 2010 WL 4929246, at *8 (D. N.J. Nov. 29, 2010), *aff'd*, 454 F. App'x 53 (3d Cir. 2011). Just as the court found in *D'Alessandro*:

> Plaintiff's argument is misplaced. Courts have clearly stated that an employer's proffered reason need not have "actually motivated its behavior." *Fuentes*, 32 F.3d at 763. Further, Defendant's proffered reason for Plaintiff's termination, when compared to Defendant's statement at the time of Plaintiff's termination, simply does not demonstrate a contradiction from which a reasonable factfinder could find Defendant's proffered reason unworthy of credence or could infer that Defendant's discriminatory animus was more likely than not a motivating cause of Plaintiff's termination. *Id*.

2010 WL 4929246, at *8; *see also* 454 F. App'x at 56 ("the City's vague statement that it is changing direction is not inconsistent with its desire to move away from employees with the deficits exhibited by D'Alessandro.").

### ii.     Age as a Motivating or Determinative Cause

As an alternative to discrediting Penn State's stated justification for discharge, Laputka can survive summary judgment by pointing to evidence that age was more likely than not a determinative or motivating cause of Penn State's action. To do so, Laputka must "point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson*, 142 F.3d at 644-45 (citing *Keller*, 130 F.3d at 1111); *see also Wardlaw*, 378 F. App'x at 226 (affirming district court's grant of summary judgment to the defendant on the ADEA claim because the plaintiff failed to meet her burden to show age discrimination was the but-for cause of the complained-of action). The Third Circuit has stated that a plaintiff can demonstrate that discrimination was more likely than not a cause of the adverse action by showing "that the employer has previously discriminated against

[him], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson*, 142 F.3d at 645 (citing *Fuentes*, 32 F.3d at 765).

Here, the record is devoid of evidence that age was a factor in Laputka's termination. In fact, during his deposition Laputka testified:

Question: Why do you believe – what facts do you base your allegations that you were terminated due to your age?

Answer: I was replaced with an employee who was significantly younger, less experienced- as far as I know, less experienced, less qualified, and less trained.

(*Laputka Dep. Tr.*, 35:2-5.) Laputka also testified he was instructed to train Williams and Ritzko in order for Penn State to have "cross-coverage" on days where employees were absent. (*Id*. at 30:9-31:4.) This, he surmises, suggests that he was discharged to allow Williams to assume his position. (*Id*.)

Laputka's mere belief that he was terminated on account of age is not of sufficient force to allow a reasonable jury to conclude that discrimination was a motivating or determinative cause of Penn State's action. *See, e.g., McGrath v. Lumbermens Merch. Corp.*, 851 F. Supp. 2d 855, 864 (E.D. Pa. 2012) (the plaintiff's mere belief or supposition that he was terminated because of his age is insufficient to trigger ADEA liability). And, although Williams was elevated to Systems Administrator six months after Laputka's termination, Laputka has not pointed to any evidence of record which would allow a reasonable jury to conclude that age motivated Penn State to discharge him and promote Williams. Likewise, Laputka's claim that he cross-trained Williams is not on its own sufficient evidence of pretext. *See, e.g., Malloy v. Intercall, Inc.*, No. 08-1182, 2010 WL 5441658, at *16 (D. N.J. Dec. 28, 2010) ("Being required to train younger workers is not in itself evidence of pretext."). Simply put, Laputka has not pointed to any evidence of record

17

that would permit a rationale factfinder to conclude that age was a motivating factor in Penn State's decision to terminate him.

Accordingly, as the record fails to show that Penn State's stated reason for terminating Laputka was pretext for age discrimination, Penn State is entitled to summary judgment on the ADEA claim.[3]

### III. Conclusion

For the above stated reasons, Penn State's motion for summary judgment will be granted.

An appropriate order follows.

April 30, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

[3] Since Penn State will be granted summary judgment on the ADEA claim, it is unnecessary to address Penn State's remaining argument regarding Laputka's claim for compensatory damages for loss of professional reputation.